# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

JAMES STANELY,

     Plaintiff,

vs.                                                          CASE NO. CV-01-J-2139-S

ABC COKE division of DRUMMOND
COMPANY, INC.,

     Defendant.



## MEMORANDUM OPINION

Currently pending before the court is the defendant's motion for summary judgment

(doc. 12), and evidence in support of said motion (doc. 13).  The plaintiff filed a response

thereto, and the defendant thereafter filed a reply.

The plaintiff commenced this action by filing a complaint alleging that the defendant

discriminated against him on the basis of his race in violation of Title VII of the Civil Rights

Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, ("Title VII"). Upon consideration of

the pleadings, memoranda of the parties and evidentiary submissions received, the court

concludes that the motion for summary judgment is due to be granted as no genuine issues

of material fact remain and the defendant is entitled to judgment in its favor as a matter of

law.

## FACTUAL BACKGROUND

In the light most favorable to the plaintiff, the court finds the facts of this case to be

as follows:

Plaintiff, a black male, began working for defendant in 1970 and is still so employed. Plaintiff depo. at 30.  In his January 29, 2001 EEOC charge, plaintiff complained of harassment, intimidation, threats, and enrollment in a treatment program without his knowledge, which plaintiff believes all stem from his race, age, and a perceived disability. Exhibits 4 to plaintiff depo.  The parties do not dispute that no EEOC charge was filed by the plaintiff earlier than January 29, 2001.  In the 2001 charge, plaintiff complains of no events earlier than June, 2000.  *Id.*  Plaintiff filed a second charge on January 10, 2002, concerning his referral to anger management classes by the plant manager, Buddy Wolfe.  Exhibit 10 to plaintiff depo.  The plaintiff asserts this was in  retaliation for filing his previous charge.[1] Exhibits 4 and 10 to plaintiff depo.; plaintiff depo. at 195-196.  No one at work has mentioned the plaintiff's EEOC charges to him.  Plaintiff depo. at 194-196.; exhibit 10 to plaintiff depo.   In his complaint, plaintiff asserts that the harassment about which he complains began on or about June 1, 2000.  Complaint at ¶ 6.

The plaintiff has worked in various departments for the defendant, but has been in the transportation department, which moves coal and coke, since 1975.  Plaintiff depo. at 33-35. He is a member of United Steelworkers Union Local 12136, which is the bargaining unit which negotiates the terms and conditions of his employment.  *Id*. at 44-45.  The plaintiff worked as a temporary, or "shove-up," supervisor from 1987 until 1997.  *Id*. at 50, 54;

---

[1] The plaintiff does not state a claim for retaliation in his complaint or in his response to the defendant's motion for summary judgment.  Rather, the sole federal cause of action stated is for hostile environment race discrimination.

declaration of Hardiman at 1.  In this position, he would work as a supervisor when a full-time supervisor was on vacation or sick.  Plaintiff depo. at 50-51.  When asked why he no longer filled this position, he responded "Don't know."  *Id.* at 55.  When asked if he was contending it was due to his race, he replied, "I don't know.  That's what I asked them why did they stop me."[2]  *Id.* at 55.  The plaintiff then stated he believed it was because of his race because "I have worked that job ever since "87 to '97 and I never messed that job up, and I never had a complaint on that job or nothing like that.  And I always been a good employee toward the company, which I will continue to do."  *Id.* at 56-57.  Scott Donze replaced the plaintiff as temporary supervisor, then Donald Stadler filled the position, and finally, Doug Southern performed the job.  *Id.* at 57-59; declaration of Hardiman at 4.  All three of these individuals are white males.  Plaintiff depo. at 60.

In 1997, Gary Stewart, white male, was the department head, and Dan Hardiman, white male, was plaintiff's immediate supervisor.  Plaintiff depo. at 60-61, 68.  The plaintiff alleges  that when Stewart retired in 1999, Hardiman should have filled Stewart's position and plaintiff should have filled Hardiman's.[3]  Plaintiff depo. at 62.  However, Scott Donze

---

[2]The defendant presented substantial evidence that the plaintiff is an excellent employee but a poor supervisor.  *See* declaration of Wolfe at 3-4, declaration of Hardiman at 1-2.

[3]The plaintiff does not state a failure to promote claim in his complaint or in his response to the defendant's motion for summary judgment.  Even if such a claim was plead by plaintiff, it would be time-barred.  The plaintiff filed his first EEOC charge on January 29, 2001.  Under 42 U.S.C. § 2000e-5(e)(1), the plaintiff must file a charge of discrimination within 180 days of the employment action about which he complains.  Stewart retired on January 31, 2000, almost a year prior to plaintiff's first charge of discrimination.  Declaration of Wolfe at 1.  Thus, any claim concerning the failure to promote plaintiff upon Stewart's retirement is barred as untimely.  *See e.g., National Railroad Passenger Corp. v. Morgan*, – U.S. – , 122 S.Ct. 2061, 2069-70

replaced Hardiman. *Id.* at 62; declaration of Wolfe, at 5. The plaintiff believes Donze received Hardiman's old position because of race. Plaintiff depo. at 64, 71. His based this belief on "Because I've been – I know that job. I've been there – worked that job ten years or more. And I've been at the company thirty something years. I also was an outstanding employee, in the time of performing that job, and I think I should have got that job before him because he hasn't been there but about five years now, six years all total right now." *Id.* at 65. The plaintiff talked to the plant manager, Bob Helms, one time on the phone to say he was interested in Hardiman's job, but does not remember when this was. *Id.* at 65-67. Hardiman told the plaintiff that if he got Stewart's job, the plaintiff should get his supervisor position, but the plaintiff does not remember when this conversation took place. *Id.* at 67-68; declaration of Hardiman at 3. The plaintiff never asked Hardiman why he did not get the job. Plaintiff depo. at 69-70.

An affidavit given to the National Labor Relations Board ("NLRB") in 1997, bearing plaintiff's signature, details complaints concerning the selection of temporary supervisors, but plaintiff testified during his deposition that he has never been to the NLRB and that he did not sign the statement in question. *Id.* at 72-73, 84-88; exhibit 3 to plaintiff depo. *See*

---

(2002). Although the plaintiff alleges acts which occurred within 180 days prior to filing his January 29, 2001 EEOC claim, these allegations do not make timely acts which occurred prior to this time period. *Id.*, at 2071.

Additionally, in his second EEOC charge, the plaintiff asserts that at least one action by the defendant was in retaliation for his filing of the first EEOC charge. However, in his complaint, the plaintiff states no claim for retaliation. Similarly, the plaintiff does not argue any such claim in his response to the defendant's motion for summary judgment. As such, the court finds any such claim is not properly before it.

*also* exhibits 1, 2 and 5 to plaintiff depo.  In fact, the plaintiff asserted at his deposition that some of the events in the 1997 NLRB statement actually occurred in 1991 or 1992.  Plaintiff depo. at 90.  This includes plaintiff's assertion that Greg England, a union committeeman, said only Hardiman and Tidwell, who are both white men, could be his supervisor.  Exhibit 3 to plaintiff depo., at 2; plaintiff depo. at 91-92, 94.  Based on the plaintiff's testimony that this comments was made no later than 1992, any claim based on this comment is time-barred.  *See National Railroad Passenger Corp. v. Morgan*, – U.S.– , 122 S.Ct. 2061, 2069-70 (2002); 42 U.S.C. 2000e-5(e)(1).

In the 1997 NLRB complaint, the plaintiff did not intend to complain about anyone except England.  Plaintiff depo. at 115-116.  However, he was also complaining about some people working as temporary supervisors for less than a week, but he could only fill the position for periods of greater than a week due to an agreement between the defendant and the union.  *Id.* at 119; *see also* exhibits 7 and 8 to plaintiff depo; declaration of Hardiman at 3.  Since then, both Stadler and Southern worked as a temporary supervisor for less than one week periods.  Plaintiff depo. at 121-122.  The plaintiff believes the agreement was directed at him personally.  *Id.* at 123-125.  He also states that white employees were allowed to serve as temporary supervisors for time periods of less than one week, but agrees that Felix McKinney, who is black, works as a temporary supervisor for periods of less than a week at a time.  *Id.* at 125-126, 129-130.  Additionally, the plaintiff worked as a temporary supervisor for less than one week time periods.  *Id.* at 127.  No one in management has ever told the plaintiff he could not be a temporary supervisor because of his race.  *Id.* at 98.  As the

5

plaintiff last served as a temporary supervisor in 1997, any claim for discrimination based on the plaintiff not filling the position for less than one week intervals is time barred. *See National Railroad Passenger Corp.*, 122 S.Ct. at 2069-70.

No manager or supervisor has ever made any comment the plaintiff took as a racial slur or said something derogatory based on race. Plaintiff depo. at 99, 106. No employees have ever made racial comments, except for the comment by Greg England in 1991 or 1992. *Id.* at 90-92; 106-107. However, in 1997 or 1998, Buddy Wolfe told the plaintiff either "Get my black ass back on the loader or I'm going to run you away from here." Plaintiff depo. at 100; or "You're going to do what the hell you're told to do." Plaintiff depo. at 103; or "Get on the loader and run your damn ass with it." Plaintiff depo. at 103-104. This was related to work Donze, his supervisor, had told the plaintiff to do. *Id.* at 99-105. The president of the Local met with the plaintiff and told him to do the work and he would handle the problem. *Id.* at 104. The plaintiff then performed the duties he had been told to do. *Id.* at 104-105. As this occurred in 1997 or 1998, any claim for discrimination based on this position is time barred. *See National Railroad Passenger Corp.*, 122 S.Ct. at 2069-70.

The plaintiff asserts that on June 15, 2000, Donald Stadler threatened his life. Plaintiff depo. at 132. The plaintiff complained to Hardiman about it. *Id.* He does not recall any specific event occurring on June 1, 2000, as is reflected in the EEOC charge as when the harassment began. Plaintiff depo. at 133, 135. The plaintiff does state that he was harassed by management for filing two grievances. Plaintiff depo. at 134.

6

The events constituting harassment for purposes of this charge consist of the following:

1. The plaintiff had to put fuel in his machine for the next man's shift, but also get his own fuel when he started his shift. Plaintiff depo. at 137-138, 141. After the plaintiff complained about this, Bob Mason, assistant plant manager, sent out a letter that each operator would be responsible for their own fuel. *Id.* at 145-146. The plaintiff states this occurred because he is black. *Id.* at 146.

2. Anytime he says anything about safety, he has to go see Mr. Wolfe. *Id.* at 138, 141. This complaint seems to relate to Donze giving the plaintiff instructions and the plaintiff telling Donze safety issues, to which Donze will not listen. *Id.* at 147-148. The plaintiff explained he did not actually have to see Wolfe every time he raised safety concerns; rather Donze threatened to take him to see Wolfe. *Id.* at 149. However, Donze gave him instructions that he believed were unsafe. *Id.* at 157-158. He called Hardiman and Harold Myree, and Hardiman told him to perform the job instructions. *Id.* at 159-161. This had nothing to do with his race. *Id.* at 161.

3. Mr. Wolfe put his finger in the plaintiff's face and cussed him out. *Id.* at 139. This involved arguments the plaintiff had with Gary Stewart, upon which Wolfe put his finger in the plaintiff's face and stated he was going to straighten out the problem, possibly in 1998. *Id.* at 170-171; exhibit E to Wolfe affidavit. Plaintiff stated this has nothing to do with his race. Plaintiff depo. at 171-172.

7

4. The plaintiff had ongoing problems with Donze. *Id*. at 139-140. One incident relates to plaintiff being told to perform a function which he thought was the supervisor's duty. *Id*. at 150-156, 172. The president of the local asked the plaintiff to please cover this duty until the situation was resolved. *Id*. at 155. Wolfe then sent out a letter stating it was the employee's duty to perform this job. *Id*. at 155-156. The plaintiff testified this was not because of his race. *Id.* at 157, 173. The plaintiff also states Donze made him pack a coal pile the plaintiff thought was done acceptably by him the first time. *Id*. at 175. Donze told him to pack to pile "till lunchtime" which was two and a half hours away and the plaintiff complied. *Id.*

5. The plaintiff was pushed by Gary Stewart. *Id*. at 141. This involved one incident where Stewart thought a truck had been waiting, although the truck had just arrived. *Id*. at 180. Stewart told the plaintiff he was not doing his job, got in the plaintiff's face, and pushed him. *Id*. The plaintiff does not recall when this occurred, but knows it was before Stewart retired. *Id*. at 180-181. The plaintiff does not know why Stewart pushed him, but stated he had no evidence it was because of his race. *Id*. at 184, 187.

6. Danny Hardiman tried to run over him with a company truck. *Id*. at 142. The plaintiff and Hardiman had been friends for "a pretty good while" and went a lot of places together. *Id*. at 190. The plaintiff had started the machine he operated when Hardiman stated that he had failed to check the fuel and the oil. *Id*. at 191. The plaintiff stated "tell me how you want me to check the fuel in the pan" and Hardiman looked at him "real dirty like, and he threw his truck in reverse and backed up. So I walked on to the  – started walking

8

toward the pan to proceed on doing what I was going to do. And when I heard the revving up of the motor, I looked back. I had to walk real fast to get out of the way to keep water and mud from jumping up on me. And he had an employee in the truck with him." *Id.* at 191-192. The plaintiff does not know why Hardiman would want to run him over. *Id.* at 193.

The incident precipitating the first EEOC charge, in which plaintiff stated his life was threatened, involved Donald Stadler. *Id.* at 197. The plaintiff called Stadler "boy" and Stadler stated he would kill plaintiff for calling him "boy" again. *Id.* at 197-198. No reference was made to plaintiff's race. *Id.* at 200. The plaintiff called the police and complained, but wanted the union to handle the problem first. *Id.* at 201-202. He also went to management about this. *Id.* at 202. He spoke with Hardiman, Walter Parker (the union steward) and Bob Mason. *Id.* at 203-204, 207. The plaintiff wanted Stadler disciplined, but only to the extent of the incident being "written up." *Id.* at 205-206. Mason told the plaintiff he needed to see a doctor. *Id.* at 208; declaration of Mason. The plaintiff later received a letter from Behavioral Health Services ("BHS"), which prompted the filing of his second EEOC charge. Plaintiff depo. at 210-211, 226-227; Exhibit 5 to defendant's evidentiary submissions.

The plaintiff testified that if he had been white, Stadler would not have threatened him.[4] *Id.* at 212-213. When asked what basis plaintiff had for this belief, he replied "Race."

---

[4]At this point the plaintiff seems to assert that the threat by Stadler was race-based, but in his EEOC charge, he claims the subsequent referral to BHS was the race-based action. In contrast, in his deposition he states the referral was race-based, but then says it was age-based discrimination. In his response to the defendant's motion for summary judgment, the plaintiff claims the referral to BHS was age-based discrimination. However, the plaintiff has not plead a

*Id*. at 213.  The plaintiff did not report to management that the threat was made because of race.  *Id*. at 213-214.  The plaintiff thought the incident was resolved, until he received the BHS letter in January, 2002.  *Id*. at 216.  He learned that he had been enrolled in BHS by Mason.  *Id*. at 217-218.  He then found out that Mason had attempted to withdraw the referral after they met in June, 2001.  *Id*. at 218, 221.

The plaintiff states that the referral was based on his race because "I have never had an encounter with the company or had any difference with Mr. Mason at all.  It was my first time ever meeting with Mr. Mason."  *Id*. at 219.  He also states that it was race related since he was the one threatened by a white employee and then referred to BHS.  *Id*. at 219-220. The referral in June, 2001 did not cause the plaintiff to lose any wages or other benefits of employment.[5]  *Id*. at 221-222.

When specifically asked who in management discriminated against him, the plaintiff listed Wolfe, Mason, Stewart and Donze, as well as England, who is not management.  *Id*. at 228.  When asked about his charge of retaliation, the plaintiff stated this was evidenced

---

cause of action for age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*

[5]When asked about his age discrimination claim, the plaintiff again stated the referral to BHS was evidence of it.  He explained that the referral without his knowledge was discrimination towards him.  Plaintiff depo. at 222-225.  Similarly, the plaintiff argues in his brief that the referral in question was "based on his age, because no action was taken against the younger Stadler ...."  Plaintiff's response to defendant's motion for summary judgment, at 3.

10

by Stewart making him do a job other than the one he believed he should have based on seniority. *Id*. at 232. This occurred in 1998 or 1999.[6] *Id*. at 234.

In a meeting in December, 2001, with Harold Myree, Jerry Stewart (a union committeeman), and Donze, the plaintiff told Donze "You need to get right with God .... Before something happen out here." Plaintiff depo. at 243-248; *see also* exhibit G to Wolfe affidavit, memo of Donze.  Wolfe discussed the incident with plaintiff, but he was not disciplined in any way for it.  Plaintiff depo. at 249; Wolfe affidavit at 5-6.

On January 9, 2002, plaintiff was again given instructions by Donze  and plaintiff responded that Donze needed to know how to operate the machine plaintiff was riding so he would know what it felt like to do what Donze was instructing him to do.  Plaintiff depo. at 250-251.  Donze told plaintiff they were going to the office.  *Id*. at 252.  Wolfe had already heard their conversation on the two-way radio.  *Id.* at 255; Wolfe affidavit at 6.  The plaintiff states Wolfe jumped up, yelled at him, and told him not to return to work until he signed up to attend anger management classes.  *Id*. at 256, 258; Wolfe affidavit at 6.  The plaintiff returned to work on January 19, 2002.  Plaintiff depo. at 263, 272.  He states the referral was discrimination based on his race and on the lawsuit he had filed because no one else has been sent to anger management classes for saying something to a supervisor.  *Id.* at 277.  When asked why he felt this way, the plaintiff responded "I just feel like that, sir." *Id.* at 278.  The

---

[6]Obviously, the defendant could not retaliate against the plaintiff in 1998 or 1999 for the plaintiff's filing of an EEOC charge in 2001.

11

plaintiff attended six weeks of anger management classes. *Id*. at 272. When asked if this affected him negatively, the plaintiff stated that it hurt his pride. *Id*. at 272-273.

The plaintiff filed a grievance over this referral, which was still pending at the time of his deposition. *Id*. at 266; exhibit 9 to plaintiff depo. His grievance addresses solely the issue of the plaintiff receiving pay for the days he was not allowed to work, pending his enrollment in anger management classes. Exhibit 9 to plaintiff depo.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e).  In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587.  The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v.  Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. SH. Kress & Co.*, 398 U.S. 144, 157 (1970); *Leigh v. Warner Brothers*, 212 F.3d 1210, 1214 (11th Cir.2000).  The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## LEGAL ANALYSIS

In spite of the numerous grounds asserted in his EEOC Charge of Discrimination, the court can glean only a hostile work environment claim that was actually plead in his

complaint.[7]  The court may consider only those incidents that occurred no earlier than 180

days of January 29, 2000.  *See National Railroad Passenger Corp.*, 122 S.Ct. at 2069-72.

In this case, none of the incidents prior to June 1, 2000 were presented in the plaintiff's

January 29, 2001 EEOC Charge.  As a general rule, a Title VII plaintiff cannot bring claims

in a lawsuit that were not included in his or her EEOC charge.  "[T]he 'scope' of the judicial

complaint is limited to the 'scope' of the EEOC investigation which can reasonably be

expected to grow out of the charge of discrimination."  *Wu v. Thomas*, 863 F.2d 1543, 1547

(11th Cir. 1989).  *See also Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir.2000).

Thus, the court considers only those incidents listed in, or reasonably related to, the EEOC

charges, which occurred no earlier than June 1, 2000.

The only evidence the plaintiff has presented that the incidents which are timely

brought are race related is his testimony that this is his belief.  In this case, the evidence of

discrimination is wholly circumstantial in nature and thus the Supreme Court burden shifting

---

[7]While the plaintiff did plead state law claims in his complaint (Counts III and IV), the court finds said claims to have been abandoned by the plaintiff through his failure to raise said claims in his response to the defendant's motion for summary judgment.  The plaintiff's response states that he has presented substantial evidence of having been subjected to a hostile work environment.  Plaintiff's response to defendant's motion for summary judgment at 1.  However, after listing three or four isolated incidents of such "harassment", the response states the disparate treatment was because of his race.  *Id.* at 2.  The plaintiff the states each of the listed incidents are evidence that plaintiff was subjected to a hostile work environment.  *Id.* at 3.  As the plaintiff thereafter only argues whether he meets his burden of establishing a claim for hostile work environment, the court gleans from the plaintiff's complaint and response that he is actually suing on the theory that he has been subjected to a hostile work environment and not that he has been subject to disparate treatment based on race.  Additionally, plaintiff argues that the referral to the anger management program was based on his age, because no action was taken against the younger Stadler.  *Id.* at 3.  However, the plaintiff has failed to set forth any cause of action under the ADEA.

scheme for evaluating circumstantial evidence and allegations applies to the facts before this

court. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 310, 116 S.Ct.

1307, 1308, 134 L.Ed.2d 433 (1996); *citing St. Mary's Honor Center v. Hicks,* 509 U.S. 502,

506, 113 S.Ct. 2742, 2746, 125 L.Ed.2d 407 (1993). *See also McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

According to the *McDonnell Douglas* framework, plaintiff must establish a prima

facie case of hostile environment race discrimination under Title VII by showing that (i) he

is a member of a protected group; (ii) that he has been subject to unwelcome harassment; (iii)

that the harassment must have been based on a protected characteristic of the employee; (iv)

that the harassment is sufficiently severe or pervasive to alter the terms and conditions of

employment and create a discriminatorily abusive environment; and (v) that the employer

is responsible for such environment under either a theory of vicarious or of direct liability.

*Miller v. Kenworth of Dothan,* 277 F.3d 1269, 1275 (11th Cir.2002); *citing Mendoza v.*

*Borden,* 195 F.3d 1238, 1245 (11th Cir.1999).  Establishment of a prima facie case creates

a presumption that the employer unlawfully discriminated against the employee. *Texas Dept.*

*of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S. Ct. 1089, 1094, 67 L.Ed.2d 207

(1981); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir.1997).

The only incidents which are relevant and properly before the court are plaintiff's

claims that he had to refuel equipment, having to see Wolfe concerning safety issues, Wolfe

putting his finger in the plaintiff's face, his various confrontations with Donze, Stadler's

threat to kill plaintiff after plaintiff called him "boy," and plaintiff's referral to anger

management classes. As to these claims, the plaintiff testified that having to see Wolfe about

safety concerns, Wolfe putting his finger in his face, some of the problems with Donze, and

being pushed by Gary Stewart had nothing to do with his race. He stated he had no evidence

Hardiman tried to run over him because of his race. Thus, the only possible incidents which

the court may consider as evidence of a hostile environment are the plaintiff being made to

fuel his machine for the next operator, being threatened by Stadler, and being referred to

anger management classes. Since the plaintiff complained to management about the fueling

issue, each operator has been directed to take care of their own fuel.   No reasonable jury

could find any hint of discrimination in this incident.

While the plaintiff is a member of a protected class, and clearly is of the opinion he

has been subject to unwelcome harassment, he has presented the court with no evidence that

the harassment was because of his race. He admits that other than one time in 1997 and one

time in 1991 or 1992, none of the perceived harassing incidents have made any mention of

race. The plaintiff states he feels harassed, however, he does not establish that any such

harassment, real or otherwise, is related to his race.

The plaintiff has failed to show actionable harassment which was sufficiently severe

to alter the terms or conditions of his employment, and he has failed to demonstrate any basis

to hold the defendant liable for his complaints of harassment.   In order to establish the

severity of harassing conduct, the court considers whether objectively, a reasonable person

would find the environment hostile or abusive, and whether subjectively, the plaintiff

16

perceived the environment to be hostile or abusive. *Harris v. Forklift Systems, Inc.*, 510, U.S. 17, 21-22, 114 S.Ct. 367, 370-371, 126 L.Ed.2d 295 (1993).

In *Harris,* the Court states that a hostile work environment claim is established upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment...." *Id.* In determining whether an actionable hostile environment claim exists, this court must look at "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[8] *National Railroad Passenger Corp.*, 122 S.Ct. at 2074, citing *Harris*, 510 U.S. at 23. The court finds that objectively, the plaintiff did not testify to any intimidation, ridicule, or insult except arguably for his referral to anger management classes, which he alternately asserts was based on his age.

The court finds that the substantial evidence, even in the light most favorable to the plaintiff, demonstrates that each of the plaintiff's perceived incidents of discrimination resulted from him arguing with supervisors, questioning work orders, threatening supervisors, and name-calling supervisors. The plaintiff's only testimony that the resulting

---

[8]The court recognizes the continuing nature of a hostile environment claim. *See e.g. National Railroad Passenger Corp.*, 212 S.Ct. at 2074-75. However, some event based on a racially hostile environment must occur within the statutory time period set forth by 42 U.S.C. § 2000e-5(e)(1). In other words, an employee cannot use one timely-filed EEOC charge as a bootstrap for lapsed claims arising out of other remote, discrete events. *Williams v. Alabama Indus. Dev't Tr'g*, 146 F.Supp.2d 1214, 1219 (M.D.Ala.2001); citing *Carter v. West Publ'g Co.*, 225 F.3d 1258, 1263-65 (11th Cir. 2000).

reactions from his co-workers and supervisors were racially motivated is plaintiff's explanation that he was in the right each time, and thus the incidents must have been racially motivated.[9] This is simply not evidence, but rather mere speculation and conjecture. The court finds no rational jury could find race played a role in Stadler's threat to plaintiff after plaintiff called Stadler "boy."[10] Similarly, the referral of plaintiff to anger management classes after threatening Donze rationally could not be found to be race related. In his own grievance concerning the second referral, plaintiff seeks pay for the time he missed from work, but does not mention race. While the plaintiff may not agree with management's assessment that he needed to attend anger management classes, this does not make the referral discriminatory. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir.1997) ("federal courts do not sit to second-guess the business judgment of employers"). Not every unkind act amounts to an adverse employment action. *Wu v. Thomas*, 996 F.2d 271, 273 n.3 (11th Cir.1993). Title VII was not intended to make this court a "super-personnel department" to reexamine employer's business decisions. *Davis v. Town of Lake Park, Florida*, 245 F.3d 1232, 1244 (11th Cir.2001). In essence, the court finds any hostility in the work environment was begun by the plaintiff himself. The plaintiff is entitled to

---

[9]Interestingly, the plaintiff sees no fault of his own in calling a supervisor "boy" and telling another supervisor to "Get right with God," and cannot imagine any reason management thought he needed anger management classes, yet at the same time states being made to follow work orders and being threatened for calling his supervisor "boy" must be based on his race because he can think of no other explanation.

[10]The court notes additional support for this finding in plaintiff's own deposition testimony that the resulting first referral to anger management classes was based on his age.

consider these incidents as harassing to him, however, the fact that he is black does not make the incidents racially motivated as plaintiff believes. *See* plaintiff depo. at 212-214.

The court finds the plaintiff has failed to make out a prima facie case of race-based hostile work environment as the plaintiff has failed to demonstrate that he was subject to any harassment based on his race. Thus, the court finds the defendant is entitled to summary judgment on Counts I and II of the plaintiff's complaint. The court further finds the defendant is entitled to summary judgment on Counts III and IV of the plaintiff's complaint as those claims have been abandoned by the plaintiff.[11]

## CONCLUSION

The court having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial, the court **ORDERS** that the defendant's motion for summary judgment on all counts of the plaintiff's complaint is hereby **GRANTED**. The claims are **DISMISSED WITH PREJUDICE**. Each party is to bear its own costs.

**DONE** and **ORDERED** this the 22 day of August, 2002.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE

---

[11]Count III of the plaintiff's complaint is a claims for "violation of the laws of the State fo Alabama that prohibit discrimination." Count IV is a claim for intentional infliction of emotional distress.